*In re* José Rivera Rivera, querellado.

Número: 104        Resuelto: 28 de septiembre de 1962

*Federido Ramírez Ross, Ángel Viera Martínez* y *Víctor Gutiérrez Franqui,* abogados del querellado; *J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El 7 de noviembre de 1960, el Procurador General de Puerto Rico, en cumplimiento de nuestra resolución de 16 de septiembre anterior, presentó una querella contra el abogado José Rivera Rivera, imputándole conducta impropia y altamente censurable consistente en los cargos que a continuación se transcriben, todos originados con motivo de unas reclamaciones hechas por el referido abogado en relación con un accidente de automóviles:

## "PRIMER CARGO

Allá para los meses de abril y mayo de 1959 el querellado, en el ejercicio de su profesión de abogado, transigió con la compañía de seguros U. S. Casualty Company, a través de los representantes de ésta en Puerto Rico, Lippit y Simonpietri, Inc., el derecho de acción de los menores Confesor Báez Rivera, Teresita Medina Ortiz y Carmín Pérez, por daños y perjuicios sufridos por estos menores como resultado de un accidente automovilístico ocurrido el día 18 de abril de 1959; obtuvo el producto de las respectivas transacciones y retuvo para sí parte del mismo en concepto de honorarios de abogado; todo lo anteriormente expuesto sin el conocimiento de los perjudicados y sin el conocimiento, autorización, ni consentimiento de los padres de los lesionados y sin la correspondiente autorización judicial.

## "SEGUNDO CARGO

Allá para los meses de abril y mayo de 1959 el querellado, en el ejercicio de su profesión de abogado, transigió con la compañía de seguros U.S. Casualty Co., a través de los representantes de ésta en Puerto Rico, Lippit y Simonpietri, Inc., sin la autorización, consentimiento ni conocimiento de los lesionados Venancio Pérez Mercado,(¹) Antonia Burgos, Inocencio Mercado Fuentes, Norberto Quianes Rivera, Antonia Rivera, Asunción Ortiz y Petra Villalongo, el derecho de acción por daños y perjuicios sufridos por las mencionadas personas como resultado de un accidente automovilístico ocurrido el día 18 de abril

---

"(¹) Todas las gestiones en el curso de la referida transacción relacionada con Venancio Pérez Mercado fueron efectuadas con el nombre de Bienvenido Pérez."

de 1959; obtuvo el producto de las respectivas transacciones y retuvo para sí parte del mismo en concepto de honorarios de abogado.

## "Tercer Cargo

Allá para los meses de abril y mayo de 1959 el querellado, sin la autorización, consentimiento, ni conocimiento de José Márquez, asumió su representación legal, y actuando en tal capacidad, a pesar de que en el accidente automovilístico ocurrido el día 18 de abril de 1959 el referido José Márquez no sufrió daños y perjuicios reclamables, transigió con la compañía de seguros U.S. Casualty Co., a través de los representantes de ésta en Puerto Rico, Lippit y Simonpietri, Inc., el supuesto derecho de acción por daños y perjuicios, obtuvo el producto de dicha transacción y retuvo para sí parte del mismo en concepto de honorarios de abogado.

## "Cuarto Cargo

Allá para los meses de abril y mayo de 1959, el querellado hizo cambiar los cheques expedidos por la compañía de seguros aludida en los cargos anteriores pagaderos conjuntamente a él y los perjudicados en las transacciones a que hemos hecho referencia anteriormente, y personalmente o en complicidad con terceras personas permitió que se falsificara en dichos cheques la firma de endoso de los perjudicados, retuvo para sí parte del dinero producto de esos cheques, y no se aseguró de que los perjudicados recibieran efectivamente las sumas que les correspondían.

## "Quinto Cargo

Allá para los meses de abril y mayo de 1959 el querellado, al transigir con la compañía de seguros los respectivos derechos de acción a que hemos aludido en los cargos anteriores, firmó como testigo de las firmas de los reclamantes en cada uno de los once (11) relevos o renuncias (releases) haciéndolo así constar a pesar de que dichos reclamantes en ningún momento firmaron esos documentos ni autorizaron a persona otra alguna a firmar por ellos.

### "Sexto Cargo

Allá para los meses de abril y mayo de 1959 el querellado presentó, ante la compañía de seguros aludida en los cargos anteriores, una reclamación falsa para el pago de daños y perjuicios supuestamente sufridos por el ciudadano José Márquez, y presentó documentos en dicha compañía en apoyo de tal reclamación, todo ello en violación al artículo 479 del Código Penal de Puerto Rico, 33 L.P.R.A. 1902."

Contestó el querellado los cargos en la siguiente forma:

### "Primer Cargo

El querellado niega que la transacción a que el mismo se contrae se hiciera sin el consentimiento de los perjudicados y/o sin el conocimiento, autorización y/o consentimiento de los padres de los lesionados y alega en contrario que de acuerdo con su mejor información y creencia dicha transacción se llevó a cabo con el consentimiento, autorización y aprobación de los padres de los menores concernidos. Acepta los demás hechos alegados en el primer cargo, alegando afirmativamente en relación con los mismos que la transacción a que se contrae el cargo se realizó por la suma de $90.00 en cada caso, no habiendo el querellado gestionado autorización judicial en relación con la misma por entender que dicha autorización no era necesaria de acuerdo con la ley; que la suma retenida por él del importe de la transacción en concepto de honorarios fue la justa compensación convenida por sus servicios.

### "Segundo Cargo

Del cargo segundo el querellado niega que la transacción a que el mismo se contrae se hiciera sin la autorización y consentimiento de los indicados lesionados y alega en contrario que de acuerdo con su mejor información y creencia dichos lesionados consintieron a la transacción. Acepta los demás hechos alegados en el segundo cargo. Alega afirmativamente que la parte del producto de las transacciones retenidas por él en concepto de honorarios de abogado representa la justa compensación convenida por sus servicios.

## "Tercer Cargo

Del cargo número tres el querellado niega que haya asumido la representación legal de José Márquez sin la autorización, consentimiento o conocimiento de éste, e igualmente niega lo alegado en el referido cargo al efecto de que José Márquez no sufrió daños y perjuicios reclamables y de que el querellado, sin la autorización, consentimiento o conocimiento de José Márquez, transigió una reclamación a nombre de éste. Alega en contrario, según su mejor información y creencia: que José Márquez sufrió daños y perjuicios reclamables como consecuencia del accidente a que se hace referencia; que asumió la representación profesional del señor José Márquez con la autorización, consentimiento y conocimiento de éste; y que el indicado José Márquez aceptó y estuvo conforme con la transacción a que se refiere el tercer cargo. Acepta los demás hechos alegados en el tercer cargo, alegando afirmativamente que la cantidad por él retenida del producto de la transacción representa la justa compensación convenida por sus servicios.

## "Cuarto Cargo

Del cuarto cargo el querellante niega que haya permitido personalmente o en complicidad con terceras personas la falsificación de las firmas de los alegados perjudicados en los endosos de los cheques y alega que hizo las gestiones que de buena fe estuvieron a su alcance para que a los reclamantes les llegaran las sumas que les correspondían. Alega afirmativamente que aceptó parte del importe de los cheques a que se refiere el cargo en pago de sus servicios profesionales y de acuerdo con el contrato en virtud del cual prestó dichos servicios y alega, además, completo desconocimiento de la alegada falsificación de los cheques.

## "Quinto Cargo

Del quinto cargo el querellado admite haber firmado los relevos o renuncias, pero niega que lo hubiera hecho como testigo de las firmas de los reclamantes. De este quinto cargo el querellado, por falta de información suficiente, niega la alegación de que los reclamantes en ningún momento firmaron los relevos o renuncias ni autorizaran a persona alguna a firmar por ellos.

## "Sexto Cargo

Del sexto cargo el querellado niega haber hecho reclamación falsa alguna y, por consiguiente, niega haber presentado documentos a la compañía de seguros en apoyo de tal reclamación falsa."

El Honorable Augusto Palmer, Juez del Tribunal Superior de Puerto Rico, fue designado para recibir la prueba y después de recibida la misma, formuló las siguientes determinaciones de hecho:

"I. El 18 de abril del 1959, durante las horas de la tarde, en una vía pública dentro de la jurisdicción municipal de Río Grande, Puerto Rico, ocurrió un accidente automovilístico consistente en una colisión ocurrida entre dos automóviles públicos, dedicados a la transportación de pasajeros mediante paga.

"II. En el referido accidente once pasajeros resultaron lesionados. Las lesiones no revistieron gravedad; sólo consistieron de contusiones leves y laceraciones superficiales. Una pasajera, Antonia Burgos, quedó inconsciente por algún tiempo, pero se desprende como posibilidad que esto ocurrió más bien debido a su avanzada edad, y al susto experimentado.

"III. Dichos pasajeros fueron conducidos a la Unidad de Salud Pública de Río Grande en donde los examinó y atendió un médico regular de dicha unidad, de nombre, Dr. Américo Deñó.

"IV. Para esta fecha, ya hacía aproximadamente seis a ocho meses que éste médico actuaba en común acuerdo con dos sujetos de la localidad, para gestionar reclamaciones de personas envueltas en accidentes automovilísticos por el estilo del relatado. Preparaba certificados médicos, y luego estos sujetos gestionaban en Río Piedras los servicios de un abogado que, utilizando tales certificados hacían entonces las reclamaciones correspondientes ante las compañías de seguros que hubieren expedido pólizas que cubrían los riesgos pertinentes. Uno de estos sujetos se apodaba Blackie, y el otro Félix Ruiz Ceballos, a quien se conocía más por los apodos, Curro y Currito. Cuando las reclamaciones tenían éxito, el doctor obtenía diez dólares por cada certificado expedido, y el intermediario utilizado, Blackie o Currito, alguna suma indeterminada. (T de E 135 a 150).

"V. En esta ocasión el Dr. Deñó, en forma casual, sin preámbulo alguno, y dirigiéndose en general al grupo de pasajeros, les dijo que él se haría cargo de sus reclamaciones. Ninguno de éstos exteriorizó reacción alguna a esta afirmación espontánea del médico; algunos no le oyeron.   (T de E 175–176).

"VI. Los pasajeros envueltos en el mencionado accidente y relacionados con la presente querella fueron los siguientes:

1. Antonia Burgos
2. Antonia Rivera
3. Petra Villalongo
4. Asunción Ortiz
5. Teresita Medina
6. Carmín Pérez
7. Norberto Quianes
8. Inocencio Fuentes
9. Venancio Pérez, quien figura como Bienvenido Pérez
10. Confesor Báez
11. José Márquez

"VII. Las personas mencionadas eran todas de la zona rural de Río Grande, de condición social humilde, de poca preparación intelectual en general, apenas sabían escribir sus nombres, tres de los adultos envueltos.   Antonia Burgos era y es analfabeta hasta el punto de no saber siquiera escribir su nombre.

"VIII. Tres de estas personas eran para la fecha del accidente y durante el trámite de las reclamaciones hechas, más tarde a su nombre, niños de corta edad, a saber: (1) Confesor Báez, de cinco años; (2) Teresita Medina, de seis años y (3) Carmín Pérez, de tres meses de edad.

"IX. a. El pasajero José Márquez, mencionado con el número 11, en la Conclusión VI, sólo sufrió un leve golpe en una espinilla, y no se sometió a examen del referido doctor, aunque estuvo en la Unidad de Salud Pública.   No obstante, el médico extendió un certificado haciendo constar que este pasajero había sufrido las siguientes lesiones:

1. Contusión en ambos brazos
2. Contusión en el costado izquierdo
3. Contusión en la rodilla derecha
4. Contusión en la región lumbar

b. Hay otros pasajeros que niegan haber sufrido todas las lesiones señaladas en el certificado expedido por el médico mencionado, en esta ocasión.

"X. Esta vez, siguiendo la práctica adoptada en casos similares anteriores, e indicada en la Conclusión IV anterior, el Dr.

Deñó, entregó a Félix Ruiz Ceballos, alias Currito, los certificados preparados por él, respecto a los once pasajeros ya mencionados. (T de E page 142 a 144). Currito fue con estos a Río Piedras donde el Lic. Cayetano Coll Pujols, a quien entrevistó en un establecimiento comercial ubicado en la primera planta del edificio que alberga las salas de Río Piedras del Tribunal de Distrito.

"XI. En la entrevista mencionada en el hecho anterior, estaba presente el querellado, Lic. José Rivera Rivera.

"XII. En la referida entrevista, el Lic. Coll Pujols no aceptó, por el momento, gestionar los casos de reclamaciones que le llevaba Currito, aduciendo que estaría ese día ocupado en un juicio en Caguas, y le sugirió al querellado que aceptara hacerse cargo de tales casos.

"XIII. El querellado, José Rivera Rivera accedió; tomó los certificados en cuestión y un informe policíaco sobre el accidente, y visitó luego la compañía de seguros, Lippit & Simonpietri, en San Juan, en gestiones de reclamación a nombre de las personas mencionadas en la Conclusión VI anterior.

"XIV. Los pasajeros del vehículo público envuelto en el accidente estaban protegidos por la póliza AFL–787901, expedida por la U.S. Casualty Co., a quien representaba la mencionada compañía de seguros. Los límites máximos de indemnización consignados en tal póliza eran de $750.00 por persona, y de $2,500.00 por accidente.(1)

"XV. La compañía de seguros informó al querellado su disposición a transar cada caso, mediante el pago de una indemnización de noventa dólares ($90.00) a cada reclamante. Le entregó al querellado los documentos 'de relevo' necesarios para efectuar la transacción.

"XVI. El querellado entregó tales 'relevos' a Currito para que tomara en los mismos la firma de los reclamantes. Le indicó que sus honorarios serían equivalentes a una tercera parte de la indemnización concedida en cada caso.

"XVII. Luego, el mencionado Currito, le iba devolviendo al querellado paulatinamente estos 'relevos' donde figuraba en-

---

"(1) Se deduce que la referida póliza fue extendida conforme a las disposiciones de ley que establece un Seguro para Automóviles de Servicio Público. (9 L.P.R.A. 180.)"

tonces una firma reputada como la del reclamante al final de cada documento de descargo.

"XVIII. (a) El querellado, cada vez que recibía alguno de estos 'relevos' firmados, iba a la compañía de seguros con el documento, firmaba el mismo allí, al lado de la firma reputada como la del reclamante y debajo del epígrafe impreso que decía 'Testigos', en español, y 'Witnesses' en inglés. Debajo de la firma del querellado aparecía en maquinilla su nombre y título a saber: 'Lcdo. José Rivera Rivera'. Al comienzo de cada documento se hacía constar que el reclamante comparecía asistido en el acto por su abogado.

(b) Concluye el Comisionado Especial, que la firma del querellado en tales documentos tuvo un carácter dual. Dicha firma sirvió para representar la comparecencia del abogado del reclamante en el documento y su aceptación de la transacción efectuada, y para atestiguar sobre la ocurrencia adicional de la firma del documento por el reclamante mismo.

"XIX. La compañía de seguros, entonces, le extendía al querellado un cheque de noventa dólares en cada caso, girado a nombre del querellado y del reclamante.

"XX. El querellado tomaba cada cheque, lo entregaba a Currito, quien más tarde se le devolvía endosado con firma reputada como del reclamante. El querellado hacía efectivo el cheque adicionando su firma de endoso; tomaba entonces de ese dinero en efectivo, treinta dólares para sí, en pago de sus honorarios, y entregaba la cantidad restante al mismo Currito.

"XXI. (a) Posteriormente el Dr. Deñó, iba entregando a las personas indemnizadas por el accidente, una suma generalmente de cuarenta dólares por persona.

(b) Sin embargo, a Antonia Burgos y a Antonia Rivera, madre e hijas respectivamente, entregó sólo sesenta y cinco dólares ($65.00) como importe total cubriendo sus dos casos. Cuando Antonia Rivera, la madre del niño Confesor Báez, no quiso aceptarlo, deposistó dicho Dr. Deñó, en la Sala de Río Grande, del Tribunal de Distrito, la suma de sesenta ($60.00), correspondientes a la reclamación de este niño. Luego dicha suma fue entregada en el Tribunal a la abuela del menor, Antonia Burgos y a su madre, la mencionada Antonia Rivera. Este trámite en el Tribunal fue uno sin formalidad alguna; no se efectuó proceso judicial alguno al respecto.

(c) El padre del referido menor, también de nombre Confesor Báez, no obtuvo un sólo centavo del importe concedido a su hijo.

(d) Al reclamante José Márquez no se le entregó dinero alguno no obstante haber pagado la compañía de seguros noventa dólares como indemnización para esta persona.

"XXII. Cuando el querellado aceptó gestionar las reclamaciones mencionadas sólo hacía unos dos meses que había conocido personalmente a Félix Ruiz Ceballos. Antes sólo lo había visto hablando con abogados, por lo que dedujo que era persona de confianza de esos abogados. El conocimiento que tenía pues, de esta persona era muy superficial, especulativo y escaso. Con estos elementos de juicio hizo una inferencia al efecto de que era el tal Currito persona 'de buena reputación.'

"XXIII. El querellado, antes o durante la gestión profesional descrita, no vio, o entrevistó ni se comunicó con las personas mencionadas en la Conclusión VI, y no medió autorización expresa o tácita, ni suficiente y verdadero consentimiento de éstas para la referida gestión profesional hecha a su nombre y beneficio, y en ejercicio de derechos pertenecientes a las mismas. Aún cuando alguna de estas personas hubiere efectivamente firmado el documento de 'relevo' utilizado en la transacción de su caso, o los cheques expedidos por la compañía de seguros, esa firma no aparece rodeada de tal conocimiento y comprensión sobre el alcance y propósito de la misma, que resulte capaz o suficiente para señalar un consentimiento genuino, eficaz y verdadero respecto a la gestión profesional del querellado en sí, la obligación pecuniaria que la misma conllevaba, y respecto a la transacción efectuada. Se concluye en igual sentido respecto al acto de aceptación de las sumas que fueron efectivamente entregadas a algunas de las personas envueltas en el accidente mencionado. Se hacen extensivas estas conclusiones a la cuestión relativa al consentimiento de los padres de los menores de edad que figuraron como reclamantes, respecto a los trámites efectuados en los casos de estos menores.

"XXIV. Cuando el querellado aceptó gestionar las reclamaciones en cuestión, sólo habían transcurrido unos días de haber sido efectiva su renuncia como juez del Tribunal de Distrito; no tenía instalada oficina particular, quería descansar un tiempo y dedicarse a negocios privados y no deseaba tener ningún caso como abogado, que le exigiera mucho trabajo.

El querellado ha desempeñado también la posición de juez de paz, en Mayagüez, ha ejercido la profesión de abogado privadamente. Ha ejercido el comercio y la industria y se encontraba para la fecha de los hechos en posición económica solvente y buena.

"XXV. El querellado no hizo, exigió, ni obtuvo comprobación alguna sobre la autenticidad de las firmas en los 'relevos' y los cheques tramitados dentro de los casos gestionados por él; en las circunstancias descritas dependió enteramente de la confianza puesta en Félix Ruiz Ceballos ante este respecto.

"XXVI. La mayoría de las personas mencionadas en la Conclusión VI, niegan haber firmado los 'relevos' y los cheques utilizados en el trámite de las reclamaciones gestionadas por el querellado. Se infiere que varias de estas firmas, son apócrifas. Sin embargo, no puede inferirse que el querellado conocía de la falsedad de las mismas.

"XXVII. El querellado no se aseguró de la entrega efectiva del dinero que enviaba a cada reclamante, como parte de la indemnización de noventa dólares que otorgaba la compañía de seguros mediante su gestión, en todos y cada uno de los once casos mencionados.

"XXVIII. El querellado gestionó, transó y cobró reclamaciones pertenecientes a los tres pasajeros menores de edad mencionados anteriormente, sin contar con una debida autorización y aceptación del padre o la madre con patria potestad sobre los mismos. En las mismas circunstancias cobró en concepto de honorarios de abogado una tercera parte de la suma concedida a cada menor, sin el consentimiento del padre o la madre, y no gestionó autorización judicial alguna respecto a las reclamaciones correspondientes a estos niños. Pero se concluye que las lesiones recibidas por los menores en cuestión no daban lugar a una indemnización por una suma mayor de quinientos dólares ($500.00).(1)

"XXIX. No hay base para inferir que el querellado, cuando hizo las reclamaciones a nombre de José Márquez y de los demás pasajeros lesionados ante la compañía de seguros, conocía el hecho de no haber sufrido éstos ninguna o algunas de las

---

"(1) Puede verse 31 L.P.R.A. 616 y 4822, respecto a los casos en que hace falta autorización judicial respecto a la enajenación y transacción sobre bienes y derechos de los hijos, menores de edad."

lesiones que se indicaban en los certificados médicos que extendió el Dr. Deñó. Por el contrario, surge que tuvo ante sí dichos certificados, y el informe policíaco, donde se hacían constar lesiones indemnizables como sufridas por estas personas en el referido accidente. No puede por lo tanto, inferirse que el querellado hizo a esa compañía, a sabiendas, alguna reclamación falsa o fraudulenta." ■

El querellado y el Procurador General radicaron objeciones al informe del Comisionado. Las hemos considerado, y las radicadas por el querellado no tienen mérito. En cuanto a las radicadas por el Procurador, la primera se refiere a la conclusión de que como "las lesiones recibidas por los menores . . . no dejan lugar a una indemnización por una suma mayor de $500" no había necesidad de previamente obtener una autorización judicial para efectuar la transacción. En *Cruz* v. *Central Pasto Viejo, Inc.*, 44 D.P.R. 367 (1933) hemos resuelto que sí es necesaria tal autorización. Véase además 31 L.P.R.A. sec. 4822.

Las otras objeciones formuladas por el Procurador General al efecto de que a la conclusión número XXVI (. . . "se infiere que varias de estas firmas son apócrifas. Sin embargo, no puede inferirse que el querellado conocía de la falsedad de las mismas") y a la conclusión número XXIX (". . . no puede, por lo tanto inferirse que el querellado hizo a esa compañía, a sabiendas, alguna reclamación falsa o fraudulenta") debe añadirse que el querellado fue negligente al no cumplir con su deber, como abogado, y que debió investigar y tomar las precauciones necesarias, mediante la debida y razonable investigación para cerciorarse de la veracidad de lo que le informaban. ■

Hemos examinado detenidamente la prueba que el Comisionado tuvo ante sí y las determinaciones de hechos formuladas están ampliamente justificadas. Ellas demuestran claramente una conducta impropia y altamente censurable por parte del querellado en el ejercicio de la profesión de abo-

gado. Era su deber conferenciar con los perjudicados antes de asumir su representación. Es altamente impropio hacer gestiones de la naturaleza de las que realizó el querellado, sin haber tenido una previa conferencia con cada una de las personas perjudicadas. Demostrando la prueba que el querellado no tenía conocimiento de la trama detrás de las reclamaciones y surgiendo que su actuación obedeció a un descuido negligente e inexcusable, nos parece que es suficiente apercibimiento de que se debe ser más cuidadoso y exigente en la representación de los casos al separarlo del ejercicio de la profesión por el término de seis meses.

*Se decretará la separación del querellado José Rivera Rivera de la profesión de abogado por el período de seis meses.*

El Juez Presidente Señor Negrón Fernández no intervino así como tampoco el Juez Asociado Señor Blanco Lugo.