*In re* COMUNICACIÓN DEL PRESIDENTE DEL COLEGIO DE ABOGADOS DE PUERTO RICO.

*Número:* MC-96-33          *Resuelto:* 12 de diciembre de 1996

## RESOLUCIÓN

Con motivo de la explosión ocurrida el 21 de noviembre de 1996 en Río Piedras, el Presidente del Colegio de Abogados de Puerto Rico, el Lcdo. Manuel Fermín Arraiza, nos comunicó su preocupación en torno a la conducta en la cual incurrieron algunos abogados al procurar e iniciar reclamaciones judiciales o promover clientes potenciales. Dicha

conducta podría estar reñida con los cánones de ética profesional, en particular con el Canon 34 (4 L.P.R.A. Ap. IX).

El Tribunal comparte la preocupación del Presidente del Colegio de Abogados de Puerto Rico. En virtud de su poder inherente para reglamentar el ejercicio de la profesión legal y fomentar el fiel acatamiento de los postulados éticos que la gobiernan, se ordena al Procurador General de Puerto Rico que, con carácter prioritario, inicie una investigación sobre la conducta profesional desplegada, después de los sucesos de 21 de noviembre de 1996, por algunos miembros de la profesión que pudieran violentar los cánones de ética profesional. Como parte de esta encomienda deberá examinar si los contratos suscritos por las víctimas y sus familiares son razonables, cumplen con el ordenamiento vigente, y si, al considerar la naturaleza del suceso, fueron otorgados libre y voluntariamente, sin mediar un aprovechamiento indebido ante el dolor y la magnitud de la tragedia.

Se le concede al Procurador General un término de sesenta (60) días para someter su informe. A la luz de este informe el Tribunal tomará aquellas medidas que estime pertinentes.

*Publíquese.*

Lo acordó el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Rebollo López emitió un voto explicativo de conformidad. El Juez Asociado Señor Fuster Berlingeri no intervino.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Voto explicativo de conformidad emitido por el Juez Asociado Señor Rebollo López.

El poder inherente que le concede la Constitución del

Estado Libre Asociado de Puerto Rico a los integrantes de este Tribunal, "de reglamentar el ejercicio de la profesión legal" y de velar por "el fiel acatamiento de los postulados éticos que la gobiernan", *no* está, *ni* puede estar, nunca en duda. Es por ello que suscribimos la resolución que hoy emite el Tribunal en relación con el lamentable suceso que ocurriera el 21 de noviembre de 1996 en Río Piedras, Puerto Rico.

De hecho, ante la seria preocupación expresada por el Presidente del Colegio de Abogados de Puerto Rico, Lcdo. Manuel Fermín Arraiza, plasmada la misma en misivas que le dirigiera, de manera individual, a los integrantes de este Foro —a los efectos, en síntesis, de que en relación con ese trágico suceso pudieran haber abogados incurriendo en conducta antiética— realmente *no* queda otra alternativa.

Sin embargo —y no obstante, repetimos, endosar la resolución del Tribunal— hemos entendido conveniente expresarnos por separado con el propósito de hacer unas observaciones que, a nuestro humilde entender, pueden resultar pertinentes.

Los abogados estudian la carrera de Derecho con el propósito, además de representar y defender los derechos que le conceden a nuestros conciudadanos nuestro ordenamiento jurídico, de poderse ganar la vida de manera honrosa y honrada. No hay duda que algunos de ellos se exceden, involucrándose en toda clase de problemas éticos y de otra índole. La "mejor evidencia" de dicha situación lo son los innumerables desaforos que este Tribunal lamentablemente decreta año tras año.

Una de las prácticas más bochornosas y repugnantes en que puede incurrir un miembro de la profesión legal lo es la conocida como la "solicitación personal de clientes", o como se conoce en el idioma inglés, "ambulance chasing". La misma, en pocas palabras y dicho de la manera más sencilla, entraña el ofrecimiento por el abogado de sus servicios legales al potencial cliente, mediante el uso de dis-

tintas artimañas, cuando los mismos no han sido solicitados.

Dicha situación, entre otras cosas, implica que en la mayoría de las ocasiones los potenciales clientes terminan siendo representados por abogados que no son lo competente que pudieran ser otros que no incurren en dicha práctica. Esta es una situación controversial y borrascosa. Como expresáramos en *In re Franco Rivera y Masini Soler*, 134 D.P.R. 823, 829 (1993), "[t]radicionalmente la profesión legal ha mirado con recelo el uso de la publicidad y la solicitación. *Esta actitud parte de la creencia de que la virtud y la buena reputación son la mejor promoción*". (Énfasis suplido.) Véanse, además: *In re Ciordia*, 121 D.P.R. 412 (1988); *In re Rivera Rivera*, 86 D.P.R. 92 (1962).

A nuestra manera de ver las cosas —y sin negar la posibilidad de que en relación con la tragedia del 21 de noviembre de 1996 algunos abogados puedan haber incurrido en la práctica antes mencionada— dicha innegable e indeseable situación *no* puede, *ni* debe, ser confundida con la gestión, completamente legítima, de un abogado que, luego de ser correctamente contratado por un cliente, radica un pleito ante los tribunales de justicia y toma, en legítima defensa de los mejores intereses de su cliente, acciones con el propósito de asegurar que, en su día, podrá probar su caso. Esto es, descargar al máximo, y conforme sus mejores habilidades y conocimiento, su responsabilidad profesional para con su cliente.

En otras palabras, debe quedar meridianamente claro que la conducta que prohíben los cánones de ética profesional, *relativa al "ambulance chasing"*, se refiere a la conducta antiética desplegada por el abogado con anterioridad a ser, y con el propósito de lograr ser, contratado por el cliente y no a conducta observada por éste con posterioridad al día en que el cliente requirió y contrató sus servicios profesionales.

Manteniendo bien presente lo antes expresado, brindamos nuestra conformidad a la resolución hoy emitida.